UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CASSANDRA R. WILTZ,

    Plaintiff,

                                                                 Civil Action 2:13-cv-00523
    v.                                                 Judge George C. Smith
                                                   Magistrate Judge Elizabeth P. Deavers

MOUNDBUILDERS GUIDANCE
CENTER, *et al.*,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an Ohio resident who proceeds without the assistance of counsel, purports to assert numerous claims against twenty-one (21) named and four (4) "John Doe" Defendants arising from her former employment with Moundbuilders Guidance Center ("Moundbuilders"), now known as Behavioral Healthcare Partners, Inc. ("Behavioral Healthcare"). The Court previously granted Plaintiff's Motion to Proceed Without Prepayment of Fees. (ECF No. 2.) This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's race-discrimination and First-Amendment claims for failure to state a claim pursuant to § 1915(e). In addition, it is **RECOMMENDED** that the Court decline to exercise jurisdiction over Plaintiff's state-law discrimination claims.

**I.**

Plaintiff alleges that she was hired to work for Moundbuilders, a facility that provides mental-health services and allegedly receives public funding, sometime in 2008.  (Compl. ¶¶ 4, 29, 30, ECF No. 3.)  Shortly after her employment began, Plaintiff purportedly discovered that Moundbuilders was engaged in unlawful accounting and financial practices.  *Id.* at ¶ 31.  According to the Complaint, officials at Moundbuilders sought Plaintiff's cooperation and assistance in continuing the unlawful practices.  *Id.*  Plaintiff represents that she refused to participate in the activity, and that she complained to her supervisors and to Moundbuilders' board of directors about the unlawful practices.  *Id.* at ¶ 32.  Plaintiff also alleges that officials at Moundbuilders treated her differently than other staff members, "which [she] believed was due to her race."  *Id.* at ¶ 31.  She indicates that she also complained to her supervisors and Moundbuilders' board of directors concerning the mistreatment.  *Id.* at ¶ 32.

Plaintiff alleges that when she complained about the unlawful activity, officials at Moundbuilders acknowledged their unlawful conduct, but indicated that they wanted to terminate Plaintiff's employment rather than cease the unlawful practices.  According to Plaintiff, officials at Moundbuilders worried that she would take action under Ohio's Whistleblower Statute if they terminated her.  Consequently, Plaintiff represents that they threatened that if she refused to resign or if she revealed their unlawful financial and discriminatory practices to anyone, they would create and circulate false information to damage her reputation and ensure she would be unable to secure other employment.  *Id.* at ¶ 34.  Plaintiff contends that officials at Moundbuilders also warned that they would enlist the help of others to damage her reputation, and that they would ensure that no court or investigative agency would

2

accept a complaint from her or allow her to pursue a lawsuit against them.  (Compl. ¶ 34, ECF No. 3.)  On the other hand, according to Plaintiff, if she resigned and agreed not to sue Moundbuilders, they promised to provide her favorable employment references.  *Id.*

According to Plaintiff, she refused to resign or agree to not sue Moundbuilders.  Plaintiff maintains that, as a result, Moundbuilders' board of directors terminated her in August 2008.  *Id.* at ¶ 35.  Plaintiff contends that members of the board of directors told her that they fired her because of her complaints and their need to continue the unlawful financial practices.

In 2009, Plaintiff allegedly filed lawsuits and complaints with various investigative agencies concerning Moundbuilders' purported unlawful financial and discriminatory practices, which provoked Defendants to make good on their threats.  *Id.* at ¶ 37.  According to Plaintiff, Moundbuilders' board of directors, "and others who had assisted [Mounbuilders] with [its] unlawful activities," provided negative employment references to prospective employers and circulated false information to damage her reputation.  *Id.* at ¶¶ 37, 38.  In addition,  Plaintiff alleges that members of the board of directors "asked Courts not to allow [her] to litigate lawsuits against them, [and] asked investigative agencies not to investigate a complaint from [her] and/or to allow [her] to make a complaint."  (Compl. ¶ 40, ECF No. 3.)  As a result of Defendants' conduct, according to Plaintiff, at least two prospective employers refused to hire her and neither the courts nor investigative agencies, such as the Accountancy Board of Ohio, will accept a complaint or lawsuit from her.  *Id.* at ¶¶ 38, 40, 45.  In addition, the Accountancy Board of Ohio allegedly refuses to approve Plaintiff's application to transfer her Certified Public Accountant ("CPA") license to Ohio because of the false information Defendants circulated about her, leaving her unable to practice as a CPA in Ohio.  *Id.* at ¶ 48.

In addition to Moundbuilders' board of directors, Plaintiff alleges that the various

3

individual Defendants assisted in circulating false information about her and convincing courts and investigative agencies to reject lawsuits or complaints that she might file. Specifically, she asserts that Defendants Michael Whitehead; Jeff Forman; Ole Bay; John Kozak; Kent Pummel; Joseph Patrick; Roy Lydic; Bradley Tobe; and John Does 1 through 4 assisted Moundbuilders in retaliating against her. *Id.* at ¶¶ 45, 41, 42. The firms of Clark, Schaefer, Hackett and Company ("Clark, Schaefer & Co.") and Schneider, Downs and Company ("Schneider, Downs & Co.") allegedly assisted as well. *Id.*

In addition to asserting discrimination and retaliation claims under federal law, Plaintiff purports to assert discrimination claims under Ohio law. *Id.* at ¶ 55. She seeks compensatory and punitive damages as well as injunctive relief. (Compl. ¶ 54, ECF No. 3.)

**II.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
>   *  *  *
>
>  (B) the action or appeal--

---

[1] Formerly 28 U.S.C. § 1915(d).

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, Section 1915(e) requires *sua sponte* dismissal of an action upon a court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party.  *Total*

5

*Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'"  *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### III.

**A.     Race-Discrimination Claim**

Two independent reasons compel dismissal of Plaintiff's claim arising from Defendants' alleged mistreatment of her on the basis of her race.  First, Plaintiff has failed to satisfy the requirements of Rule 8(a) with respect to this claim.  Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to offer more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Here, Plaintiff merely alleges that unspecified persons at Moundbuilders harassed her and treated her differently than other staff members, and that she "believed [the mistreatment] was due to her race."  (Compl. ¶ 31, ECF No. 3.)  Without more than this bare assertion of mistreatment, the Court is unable to draw the reasonable inference that any of the named Defendants discriminated against her on the basis of her race, as Rule 8(a) requires.  *Iqbal*, 556 U.S. at 678.

Second, it is clear from the face of Plaintiff's Complaint that any race-discrimination claim arising from her 2008 employment is barred by the statute of limitations.  Although the statute of limitations is normally an affirmative defense that must be raised by the defendant in

6

an answer, if the limitations bar appears on the face of the complaint, the Court may apply it during an initial screen. *See*, *e.g.*, *Watson v. Wayne Cnty.*, 90 Fed. App'x 814, 1 (6th Cir. Jan. 26, 2004) (citing *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) ("If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*."). Title VII contains a dual statute of limitations applicable to race-discrimination claims. 42 U.S.C. § 2000e-5(e)(1); *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). Specifically:

> Usually, if the alleged discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a "deferral state," in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act.

*Alexander v. Local 496 Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999) (citation omitted). Because the alleged discrimination here occurred in Ohio, a deferral state, the 300-day limitations period under Title VII applies. *See Amini*, 259 F.3d at 498 ("The alleged unlawful employment practice in this case did occur in Ohio, a deferral state, and thus the 300-day time limit to file an EEOC charge under Title VII applies."). Plaintiff alleges that the purported discrimination occurred during her employment with Moundbuilders, which terminated in August 2008. (Compl. ¶¶ 31, 35, ECF No. 3.) Consequently, Plaintiff would have had to file a charge with the EEOC by approximately July 2009, which is roughly 300 days after the purported discrimination took place. In her Complaint, Plaintiff alleges that she filed a charges with the EEOC on November 26, 2012 and January 2, 2013, well after the 300-day limitation expired. *Id.* at ¶ 51. Accordingly, because Plaintiff's racial discrimination claim fails to satisfy the requirements of Rule 8(a) and is barred by the statute of limitations set forth in Title VII, it must be dismissed.

7

B.     **Section 1983 Claims**

Plaintiff also purports to assert First Amendment retaliation claims against Defendants under 42 U.S.C. § 1983.  In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution of laws of the United States (2) caused by a person *acting under color of state law*."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (emphasis added) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)); *see also Dist. Atty's Office v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 2318 (2009) (explaining that § 1983 is a federal civil rights statute "which gives a cause of action to those who challenge a State's 'deprivation of any rights . . . secured by the Constitution.'").  The United States Court of Appeals for the Sixth Circuit employs three tests for determining whether the "color of state law" element is satisfied, namely the public function test, the state compulsion test, and the nexus test.  *Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 F. App'x 224, 226 (6th Cir. 2004) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).  The Sixth Circuit has described these tests as follows:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state.  The typical examples are running elections or eminent domain.  The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (internal quotation marks and citations omitted).  To sufficiently plead this element, a plaintiff must allege facts from which the Court could conclude that the defendant's actions could be considered actions of the State for purposes of § 1983.

Plaintiff has failed to sufficiently plead the second element of a § 1983 action with respect to any of the Defendants.  First, Plaintiff purports to assert First Amendment claims against three private consulting firms and their employees.  Specifically, Plaintiff alleges that Forman and Associates; Clark, Schaefer & Co.; and Schneider, Downs & Co. provided consulting services to Moundbuilders.  (Compl. ¶¶ 6, 20, 21, ECF No. 3.)  She also asserts claims against employees of these firms, including Defendants Jeff Forman; Joseph Patrick; Roy Lydic; Bradley Tobe; Kent Pummel; and John Does 1 through 4.  *Id.* at ¶¶ 26, 42, 21, 23-25, 27.  Second, Plaintiff purports to assert claims against Moundbuilders, now known as Behavioral Healthcare, which is also a private entity.  In addition, she asserts claims against officers and directors of Moundbuilders/Behavioral Healthcare, including Jeff Forman[2]; Patrick Evans; John Kozak; Michael Smith; Michael Whitehead; Lannie Stoll; John Michael Berry; Louise Berry; Ole Bay; Stephen Mullendore; John Capper; and Debbie Kirk.  *Id.* at ¶¶ 7, 9-18.

The conduct of a private individual or entity, such as the ones Plaintiff names in her Complaint, may be considered state action "if, [and] only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Brentweood*, 531 U.S. at 295 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  Plaintiff has not alleged that Ohio's statute compels or encourages private persons or entities like Defendants to take retaliatory measures against individuals who complain of unlawful practices.  Likewise, she alleges no facts showing that the state had a sufficiently close relationship with Defendants such that their private conduct could be fairly

---

[2]Plaintiff alleges that Jeff Forman acts as both an agent of Forman and Associates and as Chief Financial Officer of Moundbuilders.  *Id.* at ¶¶ 6, 7.

9

attributed to the state for purposes of § 1983 liability.  Finally, Plaintiff has not alleged facts sufficient to establish the public function test.

Although Plaintiff alleges that Behavioral Healthcare receives public funding, her allegation is insufficient to satisfy the second element of a § 1983 claim because "[i]t is well-established . . . that private hospitals, even those receiving federal and state funding and tax-exempt status, are not state actors under § 1983." *Grant v. Trinity Health-Mich.*, 390 F. Supp. 2d 643, 657 (E.D. Mich. 2005); *see also Crowder v. Conlan*, 740 F.2d 447, 449-53 (6th Cir. 1984) (concluding that a private hospital is not a state actor for purposes of § 1983 even though it derived revenue from government sources, was heavily regulated, had public officials on its board of directors, and was purchased by the county and leased back to the board of trustees); *Jackson v. Norton-Children's Hosps., Inc.*, 487 F.2d 502, 503 (6th Cir. 1973), *cert. Denied*, 416 U.S. 1000 (1974) (finding that a private hospital was not a state actor even though it received public funds and was heavily regulated, stating that "[w]henever state action has been discovered in activities of an ostensibly private hospital something more than a partial federal funding is involved"); *Sarin v. Samaritan Health Ctr.*, 813 F.2d 755, 759 (6th Cir. 1987) (holding that the plaintiff failed to state a § 1983 claim because state regulation of hospital and receipt of Medicare and Medicaid funds was insufficient to establish state action).

Accordingly, because Plaintiff has failed to sufficiently plead the second element of a § 1983, her purported First Amendment claims must be dismissed pursuant to § 1915(e).

**C.     State Law Claims**

Plaintiff also asserts state-law claims for race discrimination.  (Compl. ¶¶ 55-58, ECF No. 3.)  The Undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state-law claims.  Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise

supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations omitted). Here, the Complaint confirms that Plaintiff and all Defendants are citizens of Ohio. (Compl. 1-3, ECF No. 3.) Thus, the Court does not have original jurisdiction over Plaintiff's state-law claims. The Undersigned recommends dismissal of Plaintiff's purported federal claims. Under these circumstances, pursuant to 28 U.S.C. § 1367(c)(3), the Undersigned **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over any remaining state law claims, and that it **DISMISS WITHOUT PREJUDICE** any such claims.

## IV.

Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's race-discrimination and First-Amendment claims for failure to state a claim pursuant to § 1915(e). In addition, it is **RECOMMENDED** that the Court decline to exercise jurisdiction over Plaintiff's state-law discrimination claims.

## V.

If Plaintiff seeks review by the District Judge of this Report and Recommendation, she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [th defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

Date: August 12, 2013                              /s/ *Elizabeth A. Preston Deavers*
                                                                            Elizabeth A. Preston Deavers
                                                                            United States Magistrate Judge